IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

  Plaintiff,

  v.

1- JOSE LUIS AVILES-VEGA
2- RICARDO JAVIER RIVERA-RUIZ,

  Defendants.

CRIM. NO. 12-555 (FAB)

## REPORT AND RECOMMENDATION

Defendants  José Luis Avilés-Vega ("Avilés") and Ricardo Javier Rivera-Ruiz ("Rivera") are charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).  (Docket No. 29).  Before the court is Avilés's motion to suppress evidence obtained as a result of a stop and frisk search based on an anonymous tip.  (Docket No. 38).  Defendant Rivera joined the request for suppression.  (Docket No. 77, 83).  The government has opposed. (Docket No. 51).  Defendant's motion was referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docket No. 42, 43).  An evidentiary hearing was held on November 15, 2012, and the parties have filed post-hearing briefs.  (Docket Nos. 76, 81).  Although this case presents a close question, I recommend that the motion to suppress be denied.

## FACTUAL BACKGROUND

During the hearing, the court heard testimony from two government witnesses: (1) Puerto Rico Police Department ("PRPD") Officer Pedro López-Molinari ("López"), and (2) ICE Task Force Officer ("TFO") Javier N. Méndez-Rodríguez.

### PRPD Officer López's Testimony

On July 13, 2012 at 6:00 p.m., Officer López was working as desk sergeant at the Aguadilla police station (drug division) when he received an anonymous phone call from a male person reporting that four individuals in a wine-colored Chevrolet Lumina, with a license plate ending in 959 and a broken right side tail light (Exhibit 3), were traveling from Isabela to Aguadilla along

USA v. José Luis Avilés-Vega, et al.                                                    Page 2
Cr. No. 12-555 (FAB)
REPORT AND RECOMMENDATION

Road 2.  The caller informed having observed that as they drove in direction to Aguadilla, the front

passenger[1] passed a firearm to one of the individuals sitting in the back, and that the caller was

following them until they turned into Road 459 from Road 2.  (Transcript "Tr." p. 10, L 5-25; p. 11,

L 1-2).  Following protocol, López filled out a special complaint form.  (Exhibit 1).  Five to ten

minutes later, he notified Sergeant Luis Acevedo-Valentín ("Acevedo"), who instructed him to go

to Road 2 intersection of Road 459 with two fellow officers in an unmarked PRPD vehicle to

corroborate the information.  Ten to fifteen more minutes elapsed before López arrived at the

intersection, where he observed a wine-colored Chevrolet Lumina enter the Aguadilla Shopping

Mall.[2]  That mall has a Burger King and an Asian food restaurant.  López drove into the Burger King

parking lot (Exhibit 2) in order to verify the vehicle's license plate and whether it had a broken right

side tail light, and saw the vehicle being parked.  From a distance of about 100 feet away, he

confirmed that this vehicle fit the description provided by the anonymous caller.  He then left the

Burger King parking lot, and parked in front of the Asian food restaurant, where he conducted

surveillance of the vehicle and its occupants for about ten to fifteen minutes.  López reported to

Acevedo the location of the vehicle and the four male individuals, and Acevedo replied that he

would coordinate an intervention and give notice to the stolen vehicles division.

Ten to fifteen minutes later, other officers arrived and intervened with the occupants of the

vehicle.

### TFO Méndez's Testimony

On July 13, 2012 at around 7:00 p.m., Méndez arrived with three PRPD officers at the

Burger King parking lot in an unmarked vehicle.  He had been debriefed by PRPD officers about

---

[1]The certified translation of Officer López's testimony does not specify gender.  This portion of
López's testimony makes reference to one male individual.  "He passed the firearm to the rear, to one of
the individuals that's in the rear." (Tr. P. 10, L 22-23).  However, López was asked in cross-examination
whether the caller had stated the car occupants's genders or provided physical descriptions of each
individual, to which he answered no.  (Tr. P. 32, L 4-20).

[2] There is a discrepancy in testimony as to whether the shopping center is Plaza Ferram or the
Aguadilla Shopping Mall.

USA v. José Luis Avilés-Vega, et al.                                                        Page 3
Cr. No. 12-555 (FAB)
REPORT AND RECOMMENDATION

two armed persons[3] at a meeting held at Las Cascadas Park twenty to thirty minutes prior, but did

not know at the time of his arrival at the scene who provided that information to the PRPD, or how

many individuals or firearms were in the vehicle.  There were around ten officers, and three of the

officers were already standing by the subject vehicle's doors, pointing their weapons towards the

vehicle. Méndez stood by the unoccupied door at the rear of the vehicle, and also pointed his weapon

towards the vehicle for safety reasons.  One of the officers standing towards the front of the vehicle

ordered the occupants out.  Méndez noticed that the individual in front of him, Rivera, was carrying

a weapon on his waist, and proceeded to detain him.  A PRPD officer next to Méndez removed the

firearm while Méndez "spotted" him.  Méndez testified that he could see in plain view that the

firearm had a mutilated serial number.  Méndez instructed Rivera to lie on the ground, as were the

other three individuals.  Rivera was frisked,[4] and the PRPD officers handcuffed the four individuals.

## DISCUSSION

The defendants seek to suppress evidence of the seized firearms and the statements made

post-arrest as fruit of a warrantless search, alleging that, as in  Florida v. J.L., 529 U.S. 266 (2000),

an anonymous tip about a person carrying a gun lacks standard indicia of reliability and does not

justify an initial stop and frisk by a police officer. (Docket No. 38, p. 3-4).  The government in its

opposition argues that the police officers had reasonable suspicion to conduct an investigatory stop,

and that the defendants validly waived their constitutional rights to remain silent and provided the

incriminatory statements during an interview.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S.

Const., amend. IV.  These protections guard against unreasonable seizures of property in which the

person has a legitimate privacy interest.  United States v. Place, 462 U.S. 696, 706-07 (1983).

---

[3]Tr. P. 54, L 19-20.

[4]Méndez did not know whether the other three individuals were frisked.

USA v. José Luis Avilés-Vega, et al.                                              Page 4
Cr. No. 12-555 (FAB)
REPORT AND RECOMMENDATION

"[S]earches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well delineated exceptions.'" <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 372 (1993) (quoting <u>Thompson v. Louisiana</u>, 469 U.S. 17, 19-20 (1984)).

     One exception, as recognized in <u>Terry v. Ohio</u>, allows a police officer "in appropriate circumstances and in an appropriate manner [to] approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. 1, 22 (1968).  In initiating a *Terry* stop, a police officer needs only "reasonable and articulable suspicion of criminal activity." <u>United States v. Chhien</u>, 266 F.3d 1, 6 (1st Cir. 2001).  When a police officer has "a reasonable basis to suspect that the subject of his inquiry may be armed, he also may frisk the subject". <u>United States v. Cook</u>, 277 F.3d 82, 85 (1ˢᵗ Cir. 2002).  The protective search must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." <u>Terry</u>, 392 U.S. at 26.  In addition, "[d]uring a lawful *Terry*-type search, police officers may seize an object in 'plain view' without a warrant if they have probable cause to believe it is contraband without conducting some further search of the object, i.e., if its incriminating character is 'immediately apparent.'" <u>United States v. Schiavo</u>, 29 F.3d 6, 9 (1st Cir. 1994) (citing <u>Dickerson</u>, 508 U.S. at 375).

     When police officers effect an investigatory stop of a vehicle, all of the vehicle's occupants, not just the driver, are subjected to a seizure under the Fourth Amendment.  <u>Arizona v. Johnson</u>, 555 U.S. 323, 332 (2009); <u>Brendlin v. California</u>, 551 U.S. 249, 256-57 (2007); <u>United States v. Kimball</u>, 25 F.3d 1, 5 (1st Cir. 1994).  A vehicle passenger has standing to challenge an investigatory stop of the vehicle because the passenger's own interests are affected.  <u>Brendlin</u>, 551 U.S. at 259; <u>Kimball</u>, 25 F.3d at 5.  Thus, if the initial stop of the vehicle was illegal, evidence seized from a passenger by virtue of that stop may be subject to exclusion as the "fruit of the poisonous tree."  <u>Kimball</u>, 25 F.3d at 5-6 (citing <u>Wong Sun v. United States</u>, 371 U.S. 471, 484-85 (1963)).  With these principles in mind, I proceed to analyze the reasonableness of law enforcement's intervention with the defendants.

USA v. José Luis Avilés-Vega, et al.                                                    Page 5
Cr. No. 12-555 (FAB)
REPORT AND RECOMMENDATION

     In this case, the officers suspected that the occupants of the vehicle had a firearm based on information provided by an anonymous caller.  Defendants argue that <u>Florida v. J.L.</u> controls this case because in <u>J.L.</u> an anonymous tip about a person carrying a gun that lacked standard indicia of reliability did not justify an initial stop and frisk by a police officer.  The government argues that under the totality of the circumstances test, the officers had reasonable suspicion of ongoing criminal activity, and could therefore conduct an investigatory *Terry* stop, which then provided probable cause for the defendants' arrest.

     The courts recognize that reasonable suspicion may exist when a tip, corroborated by independent police work, contains "sufficient indicia of reliability" to provide reasonable suspicion to make an investigatory stop.  <u>United States v. Jones</u>, 700 F.3d 615, 621-622 (1st Cir. 2012) (citing <u>Alabama v. White</u>, 496 U.S. 325, 331-332 (1990)).  However, "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if [his] allegations turn out to be fabricated (internal citation omitted), 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'"  <u>J.L.</u>, 529 U.S. at 270 (quoting <u>White</u>, 496 U.S. at 329 (1990)).  Police officers must take steps to corroborate the information, and significant weight may be given to a tip to the extent that it demonstrates that the informant had inside information or was familiar with the defendant's affairs, such as being able to predict future behavior not known to the general public, or that the person implicated by the tip has a relevant criminal history.  <u>Jones</u>, 700 F.3d at 622 (citing <u>White</u>, 496 U.S. at 332).  Moreover, "'[c]orroboration of apparently innocent activity can establish the reliability of the informant because the activity might come to appear suspicious in light of the initial tip.'"  <u>Jones</u>, 700 F.3d at 622 (citing <u>United States v. Greenburg</u>, 410 F.3d 63, 69 (1st Cir. 2005)).  A determination of reasonable suspicion must be based on an assessment of the totality of the circumstances, and the court must look at the facts available to the officer at the moment of the seizure or search that suggest the tip was reliable.  <u>Jones</u>, 700 F.3d at 621 (quoting <u>Terry</u>, 392 U.S. at 21; <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002); citing <u>United States v. Monteiro</u>, 447 F.3d 39, 46 (1st Cir. 2006)).

USA v. José Luis Avilés-Vega, et al.                                          Page 6
Cr. No. 12-555 (FAB)
REPORT AND RECOMMENDATION

In J.L, the tip offered by the anonymous caller was that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." 529 U.S. at 268. When the police arrived at the bus stop, they found three black males, one wearing a plaid shirt, who the officers stopped and frisked, finding a gun in his pocket. The caller did not provide information as to how he knew that the individual had a firearm, and the police had no other information apart from the tip to suspect of ongoing criminal activity. The officers did not see a firearm nor was J.L. acting suspiciously. Importantly, the Court noted that the caller in that case provided no predictive information, nor explained how he knew about the gun, nor supplied any basis for believing he had inside information. Given the dearth of any information that could be investigated or corroborated, apart from the description of the defendant's location and appearance, the J.L. Court thus held that a search based upon an anonymous tip lacking indicia of reliability is not reasonable and the evidence it produces is not admissible. J.L., 529 U.S. at 274. See also United States v. Brown, 401 F3d 588 (4th Cir. 2005) (holding that anonymous tip alleging possession of firearm and providing no more than general description and location of defendant was insufficient to justify *Terry* stop).

Subsequent cases have distinguished J.L. United States v. Thompson, 234 F.3d 725 (D.C. Cir. 2000), and United States v. Valentine, 232 F.3d 350 (3rd Cir. 2000), distinguish in-person informants from anonymous telephone calls as in J.L. In both cases, a man anonymously informed in person to the police that he had just seen a man carrying a gun, so the basis of knowledge was the product of an informant's firsthand observation. In-person informants are more reliable because their anonymity is at risk and the officers have an opportunity to assess credibility and demeanor. Valentine, 232 F.3d at 354 (citations omitted). In both Thompson and in Valentine, the courts found that the tip bore indicia of reliability not present in J.L. because (1) the tipster had informed the police in person, and (2) "his knowledge was based upon firsthand observation, [and] the recency and the proximity of his claimed observations further suggested that it would prove accurate." Thompson, 234 F.3d at 729 (citations omitted). Both courts concluded that the tip had sufficient indicia of reliability.

USA v. José Luis Avilés-Vega, et al.                                                    Page 7
Cr. No. 12-555 (FAB)
REPORT AND RECOMMENDATION

  United States v. Wheat, 278 F.3d 722 (8th Cir. 2001), also distinguished J.L. based on the content of the information provided to the police in an anonymous call and the police officer's response time.  In Wheat, an anonymous motorist called 9-1-1 informing of a vehicle being driven erratically, and provided the color and make of the vehicle, the first three letters of the license plate, and a location and direction.  Wheat addresses whether, "in light of J.L., an anonymous tip about the dangerous operation of a vehicle whose innocent details are accurately described may still possess sufficient indicia of reliability to justify an investigatory stop by a law enforcement officer who does not personally observe any erratic driving."  278 F.3d at 729.  "First, the anonymous tipster must provide a sufficient quantity of information, such as the make and model of the vehicle, its license plate numbers, its location and bearing, and similar innocent details, so that the officer, and the court, may be certain that the vehicle stopped is the same as the one identified by the caller."  278 F.3d at 731.  Wheat distinguished the tip in J.L. in that the latter was "a rather generic description, and the possibility for confusion of the suspect's identity was compounded by the fact that the police only responded 'sometime' later; the record did not disclose how long."  Id. at 731-732.

  United States v. Copening, 506 F.3d 1241 (10th Cir. 2007), also concluded that the tip provided by an anonymous 9-1-1 caller possessed the requisite indicia of reliability to justify a Terry stop.  In Copening, the caller offered a firsthand observation of an individual with a firearm, extensively described the vehicle, and provided location and direction because he was following it.  As in Wheat, the tip in Copening "is readily distinguishable from the anonymous, unrecorded, and uncorroborated tip deemed unreliable in J.L."  506 F.3d at 1246.

  Turning to the case at hand, the tip received by law enforcement, as in J.L., was provided by an anonymous caller, as opposed to an in-person informant, and the police therefore had no opportunity of assessing credibility or demeanor.  Moreover, there was no testimony that the officers had other information besides the tip to suspect of ongoing criminal activity, or that the four individuals were acting suspiciously while sitting inside the Chevrolet Lumina in the parking lot.

USA v. José Luis Avilés-Vega, et al.                                                              Page 8
Cr. No. 12-555 (FAB)
REPORT AND RECOMMENDATION

On the other hand, and unlike J.L.'s "informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.," 529 U.S. at 271, the caller in this case informed that he knew of the firearm because he saw being passed from one of the car's occupants to another; specifically, the caller informed that he was following the suspect vehicle in his car and contemporaneously notified the police about what he personally observed.  In addition, the caller provided an extensive description of the vehicle and its location: a wine-colored Chevrolet Lumina with four occupants, a license plate ending in 959, and a broken right side tail light.  All of these "innocent details" turned out to be accurate when investigated by the police.  Moreover, even if Officer López was not as responsive as the officer in Wheat, who responded within minutes of receiving the tip, he located a vehicle matching the exact description within the half hour of receiving the call.  Although "'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,'" J.L., 529 U.S. at 270 (quoting White, 496 U.S. at 329 (1990)), the basis of knowledge of the informant in this case was his contemporaneous firsthand observation.

Albeit a very close case, I find that the anonymous tip had sufficient indicia of reliability, as described above, to support a determination of reasonable suspicion, and that the totality of the circumstances demonstrate that the police sufficiently corroborated information provided by the informant to furnish reasonable suspicion to make an investigatory stop.  Suppression is therefore not warranted.

## CONCLUSION

Based on the foregoing, I recommend that defendant's motion to suppress be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court.  Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  Failure to file timely and specific objections to the report and recommendation is a waiver of the right to review by the district court. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986).

USA v. José Luis Avilés-Vega, et al.                                                          Page 9
Cr. No. 12-555 (FAB)
REPORT AND RECOMMENDATION

       **IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, this 8th day of January, 2013.


                             *s/Bruce J. McGiverin*
                             BRUCE J. McGIVERIN
                             United States Magistrate Judge